UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORINIA

IGNACIO P.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,[2]

Defendant.

Case No.:  22cv1769-MSB

**ORDER REVERSING COMMISSIONER'S DECISION AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS [ECF NO. 17]**

On November 10, 2022, Plaintiff Ignacio P. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final adverse decision by Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"). (ECF No. 1.)  Based on all parties' consent (see ECF Nos. 4, 7), this case is before the undersigned as presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the Court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

[2] On December 20, 2023, Martin O'Malley was sworn into office as Commissioner of the Social Security Administration.  See https://www.ssa.gov/agency/commissioner/ (last visited on January 19, 2024). Because Kilolo Kijakazi was the Acting Commissioner during the pendency of this lawsuit, the Court uses her name.

Now pending before the Court is Plaintiff's Motion for Summary Judgment ("Motion"), claiming error by the Administrative Law Judge ("ALJ") who conducted the administrative hearing and issued the decision denying Plaintiff's application for disability insurance benefits.  (ECF No. 17-1.)  The Court has carefully reviewed the Complaint [ECF No. 1], the Administrative Record ("AR") [ECF No. 14], Plaintiff's Motion [ECF No. 17], and the Commissioner's Opposition [ECF No. 19].[3]  For the reasons set forth below, the Court **ORDERS** that that judgment be entered **REVERSING** the Commissioner's decision and **REMANDING** this matter for further administrative proceedings consistent with this Order.

## I.    PROCEDURAL BACKGROUND

On February 28, 2019, Plaintiff filed an application for social security benefits under Titles II and XVI of the Social Security Act, alleging disability beginning on August 15, 2018.  (AR 556–68, 582–83.)  The Commissioner denied the claims initially on June 20, 2019, and again upon reconsideration on October 24, 2019.  (AR 258–72, 305–17.)  On December 20, 2019, Plaintiff requested an administrative hearing.  (AR 350–51.)  ALJ Andrew Verne held a telephonic hearing on July 27, 2021, during which Plaintiff was represented by counsel.[4]  (AR 237–57.)  An impartial vocational expert ("VE"), David A. Rinehart, also appeared and testified at the hearing.  (AR 533.)

In a written decision dated August 26, 2021, ALJ Verne found that Plaintiff had not been under a disability from August 15, 2018, through the date of his decision.  (AR 49–76.)  On October 18, 2021, Plaintiff requested review of the ALJ's decision.  (AR 548–51.)  The Appeals Council denied Plaintiff's request for review on September 15, 2022, making ALJ Verne's decision the final decision of the Commissioner.  (AR 1–10.)  See also 42 U.S.C. § 405(h).  This timely civil action followed.  (See ECF No. 1.)

/ / /

---

[3] On June 26, 2023, Plaintiff filed a "Notice of Submission in Lieu of Reply."  (ECF No. 20.)

[4] ALJ Verne continued hearings on September 17, 2020 and April 15, 2021 to give Plaintiff the opportunity to obtain counsel and review the full record.  (AR 221–29, 230–36.)

## II.   SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. §§ 404.1520(a) & 416.920(a).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 15, 2018, the alleged onset date.  (AR 58.)  At step two, the ALJ found that Plaintiff had the following severe impairments that significantly limit his ability to perform basic work activities: "lumbar degenerative disc disease, diabetes mellitus, major depressive disorder, anxiety disorder, psychotic disorder, bipolar disorder, post-traumatic stress disorder, methamphetamine abuse disorder."  (Id.)  The ALJ also determined that Plaintiff's "hypertension, hyperlipidemia, chronic obstructive pulmonary disease, gastroesophageal reflux disease, and obesity" were not severe impairments because they caused "only transient and mild symptoms and limitations, are well controlled with treatment, have not met the 12-month-durational requirement, or are otherwise not adequately supported by the medical evidence in the record."  (Id.)

 At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Commissioner's Listing of Impairments.  (AR 59.)  Specifically, the ALJ concluded that Plaintiff's physical impairments did not meet the criteria for listed impairments 1.15, disorders of the skeletal spine; 2.00, special senses and speech listings; 4.00, cardiovascular system listings; and 11.00, neurological listings.  (AR 59–60.)  See also 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ also concluded that Plaintiff's mental impairments did not meet the criteria for listed impairments under 12.03, schizophrenia spectrum and other psychotic disorders; 12.04, depressive, bipolar and related disorders; and 12.06, anxiety and obsessive-compulsive disorders.  (AR 60–61.)  See also 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Based on his evaluation of the full record, the ALJ determined Plaintiff had the residual function capacity ("RFC") to:

> [P]erform medium work . . . except he is limited to understanding,
> remembering, and carrying out simple, routine, repetitive tasks with breaks

every two hours, and no fast paced work.  He is limited to no interaction with the general public, occasional work-related, non-personal, non-social interaction with coworkers and supervisors involving no more than a brief exchange of information or hand-off of product, and a low stress environment where there are few work place changes.

(AR 61.)

At step four, the ALJ found Plaintiff could perform past relevant work as a "cook helper and store laborer," because "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC]."  (AR 67.)  The VE testified that based on Plaintiff's "[RFC] and the physical and mental demands of his past work, he would be able to perform his past work as . . . generally performed."  (AR 67.)  At step five, the ALJ determined Plaintiff could perform other jobs existing in the national economy such as a floor waxer (unskilled, medium exertion, 59,600 jobs nationally); hand packager (unskilled, medium exertion, 979,000 jobs nationally); and laundry worker II (unskilled, medium exertion, 27,100 jobs nationally).  (AR 68.)  Therefore, the ALJ concluded that Plaintiff had not been under a disability as defined by the Social Security Act from August 15, 2018, through August 26, 2021.  (AR 69.)

### III.     DISPUTED ISSUES

Plaintiff raises three issues as grounds for reversal:

1.  Whether the ALJ properly considered the opinion of Berenice Vasquez, AMFT;

2.  Whether the ALJ properly considered Plaintiff's testimony;

3.  Whether the new evidence submitted to the Appeals Council warrants remand.

(Mot. at 4, 10, 14.)

### IV.  STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision.  See 42 U.S.C. § 405(g).  The scope of judicial review is limited, and the denial of benefits will only be disturbed if it is not

1  supported by substantial evidence or contains a legal error.  Luther v. Berryhill, 891 F.3d

2  872, 875 (9th Cir. 2018) (internal citations omitted).  "Substantial evidence" is a "'term

3  of art used throughout administrative law to describe how courts are to review agency

4  factfinding.'"  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting T-Mobile S., LLC

5  v. City of Roswell, 135 S. Ct. 808, 815 (2015)).  The Supreme Court has said substantial

6  evidence means "more than a mere scintilla," but only "such relevant evidence as a

7  reasonable mind might accept as adequate to support a conclusion." Id. (quoting

8  Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)).  The Ninth Circuit

9  explains that substantial evidence is "more than a mere scintilla, but less than a

10  preponderance."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting

11  Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988).

12       Where the evidence is susceptible to more than one rational interpretation, the

13  ALJ's decision must be upheld.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir.

14  2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  This includes

15  deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.

16  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Even if the reviewing court finds

17  that substantial evidence supports the ALJ's conclusions, the court must set aside the

18  decision if the ALJ failed to apply the proper legal standards in weighing the evidence

19  and reaching his or her decision.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d

20  1190, 1193 (9th Cir. 2004).  The reviewing court may enter a "judgment affirming,

21  modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing

22  court may also remand the case to the Social Security Administration for further

23  proceedings. Id.  However, the reviewing court "may not reverse an ALJ's decision on

24  account of an error that is harmless." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir.

25  2012).

26  / / /

27  / / /

28  / / /

## V.  DISCUSSION

**A.** **Whether the ALJ Properly Considered the Medical Opinion of Berenice Vasquez, AMFT**

### 1.  Summary of the parties' arguments

First, Plaintiff argues that the ALJ erred by not incorporating Berenice Vasquez's ("Ms. Vasquez") opinion into the RFC or explaining the reason for this omission.  (Mot. at 4–10.)  Specifically, Plaintiff contends the ALJ erred by finding the opinion was unpersuasive but only articulating that it was inconsistent with medical records.  (Id. at 6.)  Plaintiff argues that the ALJ's citations to specific treatment notes between January and March 2021 are an "inaccurate characterization of the evidence, which warrants remand."  (Id. at 7–9.)  Finally, Plaintiff says the ALJ erred by failing to explain why he rejected Ms. Vasquez's "probative evidence," as required by the enhanced articulation standards.  (Id. at 10.)

In response, the Commissioner argues that the ALJ reasonably considered Ms. Vasquez's opinion under the revised regulations—including the two most important factors of supportability and consistency—and found it was unpersuasive.[5]  (Opp'n at 11–15.)  Specifically, the Commissioner contends the ALJ reasonably determined Ms. Vasquez's assessment of marked and extreme limitations was inconsistent with treatment notes showing "Plaintiff was doing well," had a "linear thought process," "fair to good insight and judgment," and "no significant deficits in concentration or memory." (Id. at 13–14.)  Because the ALJ supported his interpretation of Ms. Vasquez's opinion with substantial evidence, the Commissioner argues it should be affirmed.  (Id. at 14-15.)  Finally, the Commissioner maintains that although the record may allow for more

---

[5] In a footnote, the Commissioner adds that the ALJ still incorporated much of Ms. Vasquez's opinion into the RFC by limiting Plaintiff to "understanding, remembering and carrying out simple, routine, repetitive tasks with breaks every two hours, and no fast paced work[,] no interaction with the general public, occasional work-related, non-personal, non-social interaction with coworkers and supervisors . . . and a low stress environment where there are few workplace changes."  (Opp'n at 12 n. 2.)

1  than one rational interpretation, the Court must defer to the ALJ's rational

2  interpretation.  (Id. at 15.)

3      **2.  Applicable law**

4      Plaintiff applied for social security on February 28, 2019.  (AR 556.)  Because this is

5  after March 27, 2017, the Social Security Administration's revised regulations for

6  considering medical opinions apply.  See 20 C.F.R. § 404.1520c (2017).  Under the

7  revised regulations, the ALJ does "not defer or give any specific evidentiary weight,

8  including controlling weight, to any medical opinion(s)."  Id. § 404.1520c(a).  Instead, the

9  ALJ evaluates the persuasiveness of all medical opinions using the following factors:

10  supportability, consistency, the relationship between the source and the claimant, the

11  source's specialization, and other factors such as the source's knowledge of other

12  evidence and whether there was subsequently submitted evidence.  Id. §

13  404.1520c(c)(1)–(5).  The two most important factors are supportability and

14  consistency.  Id. § 404.1520c(b)(2).  "Supportability" measures the degree to which

15  objective medical evidence and supporting explanations buttress a medical finding.  Id.

16  §§ 404.1520c(c)(1); 416.920c(c)(1).  "Consistency" is the extent to which an opinion or

17  finding is consistent with evidence from other medical sources and non-medical sources

18  in the record.  Id. §§ 404.1520c(c)(2); 416.920c(c)(2).  The ALJ may, but is not required

19  to, explain how they considered the remaining persuasiveness factors.  20 C.F.R. §

20  404.1520c(b)(2).

21      The Ninth Circuit has held that "the decision to discredit any medical opinion[]

22  must simply be supported by substantial evidence."  Woods v. Kijakazi, 32 F.4th 785,

23  787 (9th Cir. 2022).  See also Kitchen v. Kijakazi, 82 F.4th 732, 739 (9th Cir. 2023)

24  (explaining how an ALJ weighing a medical opinion must provide an explanation

25  supported by substantial evidence, which articulates how they considered supportability

26  and consistency).  Substantial evidence is "such relevant evidence as a reasonable mind

27  might accept as adequate to support a conclusion, and must be more than a mere

28  scintilla, but may be less than a preponderance."  Id. at 738 (quoting Rounds v. Comm'r

Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015)).  Ultimately, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."  Massey v. Kijakazi, No. 21-35986, 2022 WL 16916366, at *1 (9th Cir. Nov. 14, 2022) (quoting Garrison v. Colvin, 759 F.3d 995, 1012–13 (9th Cir. 2014)); see also Labryssa v. Kijakazi, No. 21-CV-04233-BLF, 2022 WL 2833981, at *7 (N.D. Cal. July 20, 2022) (finding a lack of substantial evidence where the ALJ failed to engage with the medical opinion "in any meaningful sense" and "made only a passing assessment" of the supportability and consistency factors).

### 3.  Ms. Vasquez's opinion and the ALJ's treatment thereof

Ms. Vasquez, an Associate Marriage and Family Therapist ("AMFT") at the Maria Sardinas Wellness and Recovery Center, submitted a medical source statement ("MSS") concerning Plaintiff's mental impairments in July 2021.  (AR 1426–29.)  Ms. Vasquez noted that Plaintiff had diagnoses of schizoaffective disorder, bipolar type, and post-traumatic stress disorder ("PTSD").  (AR 1426–27.)  Further, she noted that Plaintiff was prescribed Invega, Latuda, Prozac, and Depakote and had been receiving services at the facility since January 2019.  (Id.)  Ms. Vasquez recorded that Plaintiff's psychosis symptoms (i.e., hallucinations) "cause difficulty with completing major role obligations [as evidenced by] difficulty with concentration, completing tasks, following instructions."  (Id. at 1427.)  She said these symptoms also impair Plaintiff's ability to "handle usual stresses of full-time work, as increased stress may cause social impairments due to [history] of interpersonal difficulties."  (Id.)  Ms. Vasquez completed a check-off form, finding Plaintiff had the following limitations.

/ / /

/ / /

/ / /

/ / /

**Extreme[6] limitations:**

- Complete a normal workday and workweek without interruptions from psychologically based symptoms
- Deal with usual stresses of full-time work
- Adapt or manage oneself (ability to regulate emotions, control behavior, and maintain well-being in a work setting)

**Marked[7] limitations**:

- Maintain attention necessary to carry out detailed but uninvolved instructions of two-hour period
- Sustain an ordinary routine without special supervision
- Work in coordination with or proximity to others without being unduly distracted
- Perform at a consistent pace without an unreasonable number and length of rest periods
- Accept instructions and respond appropriately to supervisors
- Get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes
- Respond appropriately to changes in a routine work setting
- Interact appropriately with the general public
- Concentrate, persist, or maintain pace (ability to focus attention on work activities and stay on task at a sustained rate)

(AR 1428–29.)  Ms. Vasquez also found Plaintiff had several moderate[8] and mild[9] limitations.  (Id.)  Notably, Ms. Vasquez found no indications of malingering or substance abuse contributing to Plaintiff's limitations.  (AR 1429.)  Finally, she anticipated Plaintiff's impairments or treatment would cause him to be absent from work more than four days per month.  (Id.)

---

[6] "Extreme" means unable to function independently, appropriately, effectively, and on a sustained basis.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(e).

[7] "Marked" means functioning independently, appropriately, effectively, and on a sustained basis is seriously limited.  Id. § 12.00(F)(2)(d).

[8] "Moderate" means functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.  Id. § 12.00(F)(2)(c).  Ms. Vasquez found moderate limitations in several areas, including understanding, remembering, and carrying out simple instructions and adhering to basic standards of neatness and cleanliness.  (AR 1428–29.)

[9] "Mild" means functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.  Id. § 12.00(F)(2)(b).  Ms. Vasquez found a mild limitation in Plaintiff's ability to understand, remember, or apply information.  (AR 1429.)

The ALJ summarized Ms. Vazquez's opinion as follows:

> Berenice Vasquez, MA, opined in July of 2021 that the claimant has moderate limitations in understanding, remembering, and carrying out simple and detailed instructions, marked limitations in interacting with the public, extreme limitations in dealing with stress, mild limitations in understanding, remembering, and applying information, moderate limitations in interacting with others, marked limitations in concentrating persisting or maintaining pace, extreme limitations in adapting or managing oneself, and would be absent more than four days a month.

(AR 66.)  Based on the foregoing, the ALJ found Ms. Vasquez's opinion "unpersuasive, as it is inconsistent with medical records." (Id.)  The ALJ noted that Ms. Vasquez's opinion is generally supported by references to "hallucinations, difficulty with concentration, and an impairment in ability to handle the stresses of full-time work." (Id.)  However, he found that treatment notes from 2021 were inconsistent with the marked or extreme limitations identified by Ms. Vasquez; instead, they showed Plaintiff was doing well, had a linear thought process, fair to good insight and judgment, and no significant deficits in concentration or memory. (Id.)

### 4. Analysis

Under the revised regulations, the ALJ must articulate the persuasiveness of each medical opinion and, at minimum, explain how he considered the supportability and consistency factors.  See 20 C.F.R. § 404.1520c(a); Woods, 32 F.4th at 791–92.  The ALJ cannot reject a medical opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.  Woods, 32 F.4th at 792.  Here, the ALJ properly invoked the supportability and consistency factors and provided substantial evidence supporting his finding that Ms. Vasquez's opinion was not persuasive.

### a. Supportability

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  Woods, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  Here, the ALJ acknowledged that Ms. Vasquez "generally support[ed]" her opinion by citing Plaintiff's "hallucinations,

1  difficulty with concentration, and an impairment in ability to handle the stresses of full-

2  time work." (AR 66 (citing AR 1427)).  Plaintiff does not explicitly contest the ALJ's

3  consideration of the supportability factor.  (See generally Mot. at 4–10.)  Instead,

4  Plaintiff argues that the treatment notes cited by the ALJ "do not support the ALJ's

5  finding" and are an "inaccurate characterization of evidence." (Mot. at 7.)  Because the

6  ALJ found Ms. Vasquez's opinion was supported by the record and Plaintiff does not

7  take issue with the ALJ's supportability analysis, the Court focuses its review on whether

8  the ALJ properly assessed the consistency of Ms. Vasquez's opinion.

### b.  Consistency

10  "Consistency means the extent to which a medical opinion is 'consistent . . . with

11  the evidence from other medical sources and nonmedical sources.'" Woods, 32 F.4th at

12  792 (quoting § 404.1520c(c)(2)).  Ultimately, the ALJ found that Ms. Vasquez's

13  assessment of marked and extreme limitations was inconsistent with medical records

14  showing generally normal findings.  (AR 66.)  Plaintiff argues the "ALJ's citations are [an]

15  inaccurate characterization of evidence." (Mot. at 7.)  For instance, Plaintiff suggests

16  that the ALJ overlooked evidence that Plaintiff "continued to endorse anxiety, periods of

17  irritability, and . . . audio hallucinations and visual hallucinations" and "continued to

18  meet medical necessity due to psychosis symptoms." (Id.)

19  Here, the Court finds the ALJ properly discredited Ms. Vasquez's opinion based on

20  its inconsistency with the underlying medical evidence.  Specifically, the ALJ cited

21  treatment notes showing Plaintiff was generally doing well, had a linear thought

22  process, fair to good insight and judgment, and no significant deficits in concentration or

23  memory, in contrast to Ms. Vasquez's findings of extreme limitations in dealing with

24  stress and marked limitations in concentrating, persisting, or maintaining pace.

25  (Compare AR 1175, 1180, 1191, 1252, 1257, 1259, 1261 with AR 1428–29.)  These

26  treatment notes also showed improvements in Plaintiff's intrusive thoughts [AR 1252,

27  1257], ability to ignore hallucinations [AR 1257, 1261], and ability to manage stress [AR

28  1191].  Further, Plaintiff repeatedly presented with euthymic mood and a linear thought

process, in contrast to Ms. Vasquez's determination that Plaintiff suffered from extreme limitations in adapting or managing oneself (i.e., regulating emotions).  (Compare AR 1175, 1180, 1191, 1252, 1257, 1269, 1261 with AR 1429.)  Thus, the ALJ properly rejected Ms. Vasquez's opinion by expressly identifying inconsistencies between Ms. Vasquez's ultimate conclusions and the treatment notes informing her findings.  Allen v. Kijakazi, No. 22-35056, 2023 WL 2728857, at *1 (9th Cir. Mar. 31, 2023) (holding the ALJ properly discredited a medical opinion where it was "not consistent with the longitudinal evidence of record"); Keller v. Kijakazi, No. 3:22-CV-707-WVG, 2023 WL 6149902, at *11 (S.D. Cal. Sept. 19, 2023) (finding the ALJ's decision was supported by substantial evidence where he "expressly identified inconsistencies" between the medical opinion and underlying medical records).

### c.  The ALJ's RFC still accounted for Ms. Vasquez's opinion

Despite finding her opinion unpersuasive, the ALJ's ultimate RFC determination accounted for many of the limitations Ms. Vasquez identified.  (AR 61.)  First, Ms. Vasquez found Plaintiff had extreme limitations "deal[ing] with usual stresses of full-time work" and "adapt[ing] or manag[ing] oneself."  (AR 1428–29.)  The ALJ accounted for these limitations by restricting Plaintiff to "simple, routine, repetitive tasks" and "a low stress environment."  (AR 61.)  Further, Ms. Vasquez opined Plaintiff had marked limitations "interact[ing] appropriately with the general public" and "concentrate[ing], persist[ing], or maintain[ing] pace."  (AR 1428–29.)  The ALJ accounted for Plaintiff's irritability and limited capacity for interpersonal interactions by restricting him to "no interaction with the general public" and only "occasional" interaction with coworkers and supervisors.  (AR 61.)  Though he did not explicitly address concentration, persistence, and pace, the ALJ's RFC allowed for "breaks every two hours" and called for "no fast paced work."  (Id.)  The RFC need not quote every finding, so long as it generally captures the limitations in the medical opinion.  See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  Because the ALJ's ultimate RFC addressed many

limitations identified by Ms. Vasquez, this further undermines Plaintiff's contention that the ALJ erred by not incorporating Ms. Vasquez's opinion.

### 6. Conclusion

The ALJ provided substantial evidence supporting his finding that Ms. Vasquez's opinion, although internally supported, was inconsistent with objective medical evidence.  See Woods, 32 F.4th at 793 n. 4 (holding the ALJ did not err in discrediting a medical opinion that was "inconsistent" but not necessarily "unsupported"); Ford v. Saul, 950 F.3d 1141, 1156 (9th Cir. 2020) (upholding an ALJ's decision to reject a medical opinion that was inconsistent with other findings in the physician's own notes).  Additionally, the ALJ's RFC sufficiently accounted for Ms. Vasquez's opinion by limiting Plaintiff to simple, repetitive tasks; no public interaction; a low stress environment; and frequent breaks.  See Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223 (9th Cir. 2010) (finding that a RFC limiting plaintiff to simple, routine tasks and no public contact sufficiently accounted for medical opinion assessing "marked limitations in social functioning").  Because the ALJ's decision to reject Ms. Vasquez's opinion is supported by substantial evidence, the Court finds no error.  Tommasetti, 533 F.3d at 1038 (internal citations omitted) (upholding the ALJ's finding where it is susceptible to more than one rational interpretation).

### B. Whether the ALJ Properly Considered Plaintiff's Testimony

#### 1. Summary of the parties' arguments

Plaintiff next argues that the ALJ failed to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony about his pain and functional limitations.  (Mot. at 10–14.)  Plaintiff contends that after he demonstrated his impairments cause some degree of pain and dysfunction, the burden shifted to the ALJ to articulate specific reasons for rejecting his testimony; however, the ALJ's reasoning was not legally sufficient.  (Id. at 10, 13.)  First, Plaintiff contends the ALJ improperly characterized Plaintiff's course of treatment as "conservative."  (Id. at 11–12.)  Second, Plaintiff contends the ALJ over-emphasized treatment notes reflecting mild clinical findings and

1    merely summarized the medical evidence.  (Id. at 12.)  Third, Plaintiff argues the ALJ

2    incorrectly found that Plaintiff's ability to perform daily activities—such as watching

3    television, preparing meals, and caring for his children—indicated a lack of limitations.

4    (Id. at 12–13.)  Thus, Plaintiff argues the ALJ erred by failing to articulate legally

5    sufficient reasons for discrediting his testimony and asks the Court to "deem that

6    testimony as true" and award Plaintiff benefits.  (Id. at 13–14.)

7         In response, the Commissioner argues that the ALJ "reasonably found that

8    Plaintiff's symptom allegations were not entirely reliable."  (Opp'n at 7.)  However, the

9    ALJ accounted for Plaintiff's supported limitations by limiting him to medium work with

10   additional restrictions.  (Id.)  Specifically, the Commissioner contends the ALJ properly

11   found Plaintiff's allegations of back pain and limitations in "almost all areas of physical

12   functioning" were at odds with the objective medical evidence.  (Id. at 8–9.)

13   Additionally, the Commissioner argues the ALJ properly found Plaintiff's ability to

14   perform activities of daily living undermined the reliability of his alleged symptoms and

15   limitations.  (Id. at 9–10.)  Because the ALJ's conclusion is supported by substantial

16   evidence, the Commissioner contends it should be affirmed.  (Id. at 11.)

17        **2.  Applicable law**

18        When evaluating a claimant's allegations regarding subjective symptoms, the ALJ

19   must engage in a two-step analysis.  Johnson v. Kijakazi, No. 19-17359, 2022 WL

20   1553259, at *1 (9th Cir. May 17, 2022); Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir.

21   2009); see also Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability

22   Claims, SSR 16-3P, at *2–3 (S.S.A. Oct. 25, 2017).  First, the ALJ must determine whether

23   there is objective medical evidence of an underlying impairment that "could reasonably

24   be expected to produce the pain or other symptoms alleged."  Trevizo v. Berryhill, 871

25   F.3d 664, 678 (9th Cir. 2017) (quoting Garrison, 759 F.3d at 1014–15.  The claimant is

26   not required to show that an underlying impairment could reasonably be expected to

27   cause the severity of the pain alleged, but only that it could have reasonably caused

28

some degree of pain.  Vasquez, 572 F.3d at 591 (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Second, if the claimant satisfies the first step and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of their symptoms "only by offering specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15).  "The clear and convincing standard is the most demanding required in Social Security cases."  Revels, 874 F.3d at 655 (quoting Garrison, 759 F.3d at 1014–15).  General findings are insufficient, and the ALJ must identify which specific symptom statements are being discounted and what evidence undermines those claims.  See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); Burch, 400 F.3d at 680.  An ALJ's failure to identify specific statements and explain why they are not credible constitutes harmful error because it precludes meaningful review.  Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015); see also Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, at *10 (S.S.A. Oct. 25, 2017) ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

"[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by their medical sources, and observations by the Agency's employees and other persons. 20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3).  Factors the ALJ may consider, in addition to objective medical evidence, include Plaintiff's daily activities; the location, duration, frequency, and intensity of their pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication

1  taken to alleviate pain; treatment; and any other measures used to relieve pain.  See 20

2  C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3); Soc. Sec. Ruling 16-3p Titles II & XVI:

3  Evaluation of Symptoms in Disability Claims, SSR 16-3P, at *7–8 (S.S.A. Oct. 25, 2017).

4  The ALJ may also consider inconsistencies between Plaintiff's statements and the

5  medical evidence.  See 20 C.F.R. § 404.1529(c)(4); 20 C.F.R. § 416.929(c)(4).

6  **3. Plaintiff's testimony**

7  **a. Function report**

8  Plaintiff's wife, Maribel Herrera, completed a function report on his behalf in June

9  2019.  (AR 681–89.)  Plaintiff testified that he has "really bad back pain" due to a

10  herniated disc and that he is diagnosed with degenerative disc disease.  (AR 681).

11  Further, Plaintiff stated he is unable to stand or sit for long periods of time and has

12  trouble bending over; if he stands or sits for too long, his left leg becomes numb and he

13  cramps.  (Id.)  Later, he testified to being able to lift twenty-five pounds and walk

14  approximately a mile and a half without a break.  (AR 687.)  Plaintiff said he tries to help

15  care for his children and complete house work such as laundry and dishes, but he is

16  unable to do much because of his back pain and limited walking ability.  (AR 682–84.)

17  This also impacts his ability to bathe himself, as it is difficult to bend over and scrub his

18  body.  (AR 682–83.)  He is only able to prepare simple meals and requires reminders

19  from his wife to shower and brush his teeth.  (AR 684.)

20  With respect to mental impairments, Plaintiff testified that he "see[s] and hear[s]

21  voices" and has anxiety and depression.  (AR 682.)  He explained "I am depressed all the

22  time and I don't really like to be out in public."  (AR 687.)  Plaintiff said he leaves the

23  house about one to two times a week and does not shop because he gets "irritated with

24  being in public places with too many people."  (AR 685.)  Plaintiff further emphasized "I

25  can't control my anxiety."  (AR 688.)  His conditions affect the following activities: lifting,

26  squatting, bending, standing, sitting, kneeling, stair-climbing, memory, understanding,

27  and getting along with others.  (AR 687.)  Finally, Plaintiff testified that his attention

28  span is five minutes, he struggles with spoken instructions (although he is "pretty good"

at written instructions), and he does not handle stress or changes in routine well.  (AR 687–88.)

### b.  Administrative hearing

During the administrative hearing on July 27, 2021, Plaintiff testified that he gets around by public transportation, or his wife drives him.  (AR 244.)  Plaintiff last worked twenty-five to thirty-five hours a week at a Lemonade Restaurant in August 2018.  (AR 245, 247.)  His duties included cooking, preparing the kitchen, and washing dishes.  (AR 247.)  When asked why he can no longer work, Plaintiff said "[b]ecause I have mental problems.  I suffer hallucinations.  I hear voices.  I have depression and I can't work under a lot of stress."  (AR 249.)  Plaintiff testified he was last hospitalized in October 2020 following a mental health crisis and hallucinations.  (AR 250.)  Further, Plaintiff said he had his gallbladder extracted and received an injection in his thoracic spine.  (AR 250–51.)  He testified to taking mental health medication since 2019 and said he received no treatment for drinking, smoking, or drug use since 2018.  (AR 251.)  The ALJ did not elucidate any other testimony regarding Plaintiff's symptoms.  (See generally AR 239–56.)

### 4.  The ALJ's findings

The ALJ began his credibility analysis by summarizing Plaintiff's testimony as follows:

> The claimant alleges that he is unable to work due to functional limitations imposed by his impairments.  He testified to hallucinations, hearing voices, depression, and stress (Hearing Testimony).  He reported he was hospitalized in October of 2020 for 72 hours for a mental crisis and hallucinations (Hearing Testimony).  In his function report, he alleged limitations in lifting, squatting, bending, standing, sitting, kneeling, memory, understanding, and getting along with others (Ex. 10E at 7).

(AR 62.)  The ALJ found that Plaintiff's medically determinable impairments could have reasonably produced the alleged symptoms.  (Id.)  However, the ALJ determined Plaintiff's "allegations as to the nature, intensity, persistence, and limiting effects of those symptoms are not fully substantiated by the medical signs, laboratory findings and

1  other evidence of record," as required by 20 C.F.R. § 404.1529(c), 20 C.F.R. §

2  416.929(c)(3), and SSR 16-3P.  (Id.)

3      The ALJ then summarized various medical records pertaining to Plaintiff's physical

4  and mental impairments [AR 62–65],[10] concluding that "treatment notes reflect mild

5  observed clinical signs and conservative treatment, inconsistent with reported

6  limitations."  (AR 62.)  He also determined that Plaintiff's "activities of daily living,

7  including focusing to watch movies, using public transportation, and caring for his

8  children are not consistent with reported limitations."  (AR 63.)  While medical records

9  reflected back pain, neuropathy, and sensory deficits in Plaintiff's lower extremities, the

10 ALJ cautioned that many examination results were normal; accordingly, the ALJ found

11 that limiting Plaintiff to medium work was appropriate.  (Id.)  As to Plaintiff's mental

12 impairments, the ALJ reasoned "[t]reatment notes reflect generally mild observed

13 clinical signs, inconsistent with the degree of limitation alleged."  (AR 64.)  Further, he

14 found the record supported "generally mild symptoms when the claimant is compliant

15 with medication."  (Id.)  The ALJ included additional limitations in his RFC assessment to

16 account for Plaintiff's cognitive deficits, irritability, difficulty managing stress, and

17 occasional hallucinations.  (AR 65.)  Ultimately, the ALJ assessed Plaintiff with the RFC to

18 perform medium work with some non-exertional limitations.  (AR 61.)

19      **5.  Analysis**

20      The Court now undertakes the two-step analysis to determine whether the ALJ

21 properly discounted Plaintiff's subjective testimony.  See Johnson, 2022 WL 1553259, at

22 *1.  Neither party contests the ALJ's determination that Plaintiff has the following

23 severe impairments: lumbar degenerative disc disease, diabetes mellitus, major

24 depressive disorder, anxiety disorder, psychotic disorder, bipolar disorder, post-

25 traumatic stress disorder, and methamphetamine abuse disorder.  (AR 58.)  Because the

26 ALJ found that Plaintiff's "medically determinable impairments could have reasonably

---

28  [10] The ALJ also considered medical opinions and prior administrative medical findings.  (AR 65–66.)

been expected to produce the alleged symptoms," this satisfies the first prong.  (AR 62.)  See, e.g., Vasquez, 572 F.3d at 591 (finding the ALJ satisfied step one where the "ALJ acknowledged that [plaintiff's] injuries 'could reasonably be expected to produce some of the pain and other symptoms alleged'").

Additionally, neither party alleges there is evidence of malingering.  (See generally Mot. & Opp'n.)  Thus, the ALJ may reject Plaintiff's testimony only by providing "specific, clear, and convincing" reasons.  See Brown-Hunter, 806 F.3d at 489; see also Leza v. Kijakazi, No. 21-16079, 2022 WL 819782, at *2 (9th Cir. Mar. 17, 2022).  In addition to giving clear and convincing reasons, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  Failure to do so is a harmful legal error, as it precludes the court from conducting a meaningful review of the ALJ's reasoning.  See Brown-Hunter, 806 F.3d at 492 ("If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions' ") (quoting Treichler, 775 F.3d at 1103).  Here, the ALJ failed to meet the demanding "clear and convincing" standard for several reasons.

### a.  Specificity

As an initial matter, the ALJ failed to identify specific statements he found not credible, and thus did not provide the necessary information to allow for this Court's meaningful review.  See Brown-Hunter, 806 F.3d at 492.  The ALJ generally explained that Plaintiff's "allegations as to the nature, intensity, persistence and limiting effects of [Plaintiff's] symptoms are not fully substantiated by the medical signs, laboratory findings and other evidence of record."  (AR 62.)  This vague reference to Plaintiff's statements does not comport with the requirement to specifically identify the testimony being discredited.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)) (the ALJ "must specifically identify what testimony is credible and what

evidence undermines the claimant's complaints") (internal citations omitted); Lambert, 980 F.3d at 1277 (holding that while the ALJ does not have to perform a "line-by-line exegesis of the claimant's testimony," the ALJ must offer more than a non-specific conclusion that the testimony was inconsistent with the medical record); Treichler, 775 F.3d at 1103 (finding error where the ALJ made a single, boilerplate statement and failed to identify what parts of the plaintiff's testimony were not credible and why).

Additionally, the ALJ failed to identify specific evidence that contradicted Plaintiff's testimony; instead, he merely stated his RFC determination and provided a general summary of the medical evidence.  (See AR 62–66.)  "[S]imply reciting the medical evidence in support of [a RFC] determination" does not meet the "clear and convincing" standard for rejecting a plaintiff's testimony.  Brown-Hunter, 806 F.3d at 489.  See also Lambert, 980 F.3d at 1278 (holding that a "relatively detailed overview of [plaintiff's] medical history" was not the same as providing clear and convincing reasons for discounting plaintiff's testimony).  As the Ninth Circuit stated in Martinez, "without any meaningful explanation for rejecting [plaintiff's] testimony, we have nothing with which to assess the legitimacy of that rejection."  Martinez v. Colvin, 585 F. App'x 612, 613 (9th Cir. 2014) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884–85 (9th Cir. 2006)).  While it may be possible to draw inferences from the ALJ's summary of the medical evidence, it is not the Court's job to do so.  Accordingly, because the ALJ failed to properly identify the statements he found not credible and the specific evidence undermining Plaintiff's testimony, the Court is unable to accurately assess the adequacy of the ALJ's findings.

### b. Conservative treatment

Although the ALJ does not explicitly state this, he seems to discount the severity of Plaintiff's symptoms in part because of "conservative treatment with medications [and] no physical therapy, spinal injections, use of a TENs unit, or consultations for

surgery."[11]  (AR 62.)  The Ninth Circuit has held that conservative treatment can be a basis for discounting a plaintiff's "testimony regarding severity of an impairment."  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (holding the use of solely over-the-counter medication to treat pain was "conservative treatment" the ALJ could reasonably rely on to discount subjective testimony).  However, "[a]ny evaluation of the aggressiveness of a treatment regime must take into account the condition being treated."  Revels, 874 F.3d at 667.  Further, a plaintiff "cannot be discredited for failing to pursue non-conservative treatment options where none exist."  Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010).  The Court's review of the medical record reveals that Plaintiff underwent the following treatment for his back and neck pain:

- September 2020:  Plaintiff tried a variety of medications for his pain "including Norco, NSAIDS, and Vicodin."  (AR 138.)

- November 2020:  Plaintiff underwent a lumbar epidural steroid injection ("LESI") and reported relief from the procedure.  (AR 142, 154.)

- June 2021:  Plaintiff was "referred to injections" and "referred to [durable medical equipment."  (AR 147.)  It is unclear if the injections occurred.

- July 2021:  Plaintiff reported going to an acupuncturist and taking "horizant, ibuprofen 800mg, and diclofenac tablet and gel" for his pain.  (AR 148.)

- August 2021:  Plaintiff underwent a spinal orthosis for a "back brace to provide support and reduce pain."  (AR 87–90.)

- February 2022:  Plaintiff was referred to a facet medial branch block lumbar injection, though it is unclear if it occurred.  (AR 153.)  Notes also indicate Plaintiff received "TENS pads" and "failed conservative treatment including therapy."  (Id.)

In this case, the ALJ broadly concluded that Plaintiff's treatment was "conservative" because it included "no physical therapy, spinal injections, use of a TENs unit, or consultations for surgery."  (AR 62.)  However, the above list reveals that the ALJ

---

[11] The ALJ seems to only refer to Plaintiff's treatment for his back and neck pain; therefore, the Court does not need address his mental health treatment.

overlooked at least one spinal injection [AR 142, 154], Plaintiff's use of TENS pads and physical therapy [AR 153], and perhaps other treatments.  Ninth Circuit courts have held that injections coupled with narcotic pain medication—the treatment Plaintiff received in this case—cannot be characterized as "conservative."  See, e.g., Garrison, 759 F.3d at 1015 n. 20 ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); Gilliland v. Saul, 821 F. App'x 798, 799 (9th Cir. 2020) (finding treatment consisting of pain medications and injections was not conservative); Duarte v. Berryhill, No. 16CV2654 W (BGS), 2018 WL 785819, at *8–9 (S.D. Cal. Feb. 8, 2018), report and recommendation adopted, No. 16-CV-2654 W (BGS), 2018 WL 1108783 (S.D. Cal. Mar. 1, 2018) (finding the same).  Further, the ALJ failed to show that other non-conservative treatments existed, and therefore cannot penalize Plaintiff for not pursuing more aggressive modalities.  Lapeirre-Gutt, 382 F. App'x at 664 ("A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist").  Thus, the ALJ failed to give specific, clear, and convincing reasons for finding that Plaintiff's treatment was conservative because he overlooked certain treatments and did not identify more aggressive treatment options that were available.  Kimberli M.S. v. Kijakazi, No. 21CV1836-AJB-MDD, 2023 WL 2346330, at *12 (S.D. Cal. Mar. 3, 2023), report and recommendation adopted, No. 21-CV-01836-AJB-MDD, 2023 WL 8696370 (S.D. Cal. Apr. 11, 2023) (finding error where the ALJ "recited Plaintiff's capabilities and made generalized conclusions" that Plaintiff's treatment was conservative without linking to testimony and identifying more aggressive treatment options that were available).

### c.  Inconsistencies with objective medical evidence

The ALJ appears to primarily discount Plaintiff's testimony because "[t]reatment notes reflect mild observed clinical signs and conservative treatment, inconsistent with reported limitations."  (AR 62–64.)  An ALJ's identification of inconsistencies between a plaintiff's testimony and the objective medical evidence may be a clear and convincing reason for discounting testimony.  See, e.g., Koch v. Berryhill, 720 F. App'x 361, 364 (9th

1   Cir. 2017) (finding the ALJ's identification of inconsistencies between the objective

2   medical evidence and plaintiff's alleged carpel tunnel syndrome was a clear and

3   convincing reason); Frankie Anita T. v. Kijakazi, No. 20CV2049-MSB, 2022 WL 4111877,

4   at *11–12 (S.D. Cal. Sept. 8, 2022) (finding the ALJ's identification of inconsistencies

5   between the objective medical evidence and plaintiff's complaints of an enlarged heart,

6   numbness in her hands, and mental, social, and cognitive functioning was a clear and

7   convincing reason).  However, an ALJ cannot rely solely on objective medical evidence to

8   discredit an individual's pain testimony.  See 20 C.F.R. § 404.1529(c)(2); Soc. Sec. Ruling

9   16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, at *5 (S.S.A.

10  Oct. 25, 2017) ("[W]e will not disregard an individual's statements about the intensity,

11  persistence, and limiting effects of symptoms solely because the objective medical

12  evidence does not substantiate the degree of impairment-related symptoms").

13          It is evident from the Court's review of the record that the ALJ selectively

14  highlighted certain benign findings while ignoring others, which is impermissible.

15  Holohan, 246 F.3d at 1207 (finding error where the ALJ "selectively relied on some

16  entries" while ignoring others showing possibly disabling impairments).  For example,

17  the ALJ cited Dr. Amy Kanner's examination notes from May 2019 showing "no lumbar

18  tenderness, no spasms, a negative straight leg raise test, a range of motion within

19  normal limits, 5/5 strength, intact sensation, and a gait within normal limits."  (AR 62

20  (citing AR 912–19).)  The ALJ also noted "[e]xaminations from December of 2019,

21  February, May, July, September, and October of 2020 were normal with a normal range

22  of motion, normal coordination, and normal reflexes."  (AR 62 (citing AR 1322, 1345,

23  1353, 1356, 1365–66, 1371–72).)  Similarly, the ALJ cited treatment notes from 2021

24  showing Plaintiff had "a linear thought process, and fair to good insight and judgment,

25  with no significant deficits in concentration or memory indicated."  (AR 64 (citing AR

26  1175, 1180, 1191, 1252, 1257, 1259, 1261).)  However, the ALJ failed to meaningfully

27  compare or contrast these alleged "inconsistencies" with specific portions of Plaintiff's

28  testimony.  (See AR 62–67.)  In addition, the ALJ did not engage meaningfully with

1  significant parts of Plaintiff's testimony, particularly Plaintiff's testimony regarding his

2  mental impairments, frequent hallucinations, and depression symptoms.  (See, e.g., AR

3  21, 24, 85, 93, 100, 138, 142, 204, 1063, 1099, 1160, 1437, 1459, 1524.)  Thus, the ALJ's

4  cherry-picking of certain inconsistencies ignores the record as a whole and is not a clear,

5  convincing, and specific reason for discrediting Plaintiff's testimony.  See Diedrich v.

6  Berryhill, 874 F.3d 634, 642 (9th Cir. 2017) (citing Garrison, 759 F.3d at 1017-18) (finding

7  error where the ALJ "cherry-picked" the absence of certain symptoms when discrediting

8  plaintiff's testimony).

9  **d.  Activities of daily living**

10  Finally, the ALJ seemingly contends that Plaintiff's activities of daily living are

11  inconsistent with his reported limitations.  (AR 63.)  The Ninth Circuit has "repeatedly

12  asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does

13  not in any way detract from her credibility as to her overall disability.  One does not

14  need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d

15  1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

16  Further, "disability claimants should not be penalized for attempting to lead normal lives

17  in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  An

18  adverse credibility finding based on daily activities may be proper "if a claimant engages

19  in numerous daily activities involving skills that could be transferred to the workplace."

20  Burch, 400 F.3d at 681.

21  In discussing Plaintiff's functional limitations, the ALJ cited evidence of Plaintiff's

22  ability to watch television and movies, prepare his own meals, do laundry, wash dishes,

23  use public transportation, and care for his children.  (AR 63 (citing AR 239–56, 681–89,

24  937).)  However, the ALJ mischaracterized several of these activities.  Regarding

25  Plaintiff's ability to care for his children and complete housework, the ALJ ignored

26  Plaintiff's testimony that his wife handles much of the childcare and chores because

27  Plaintiff cannot stand for long periods of time.  (AR 682–84.)  Furthermore, an

28  individual's ability to care for their children, without more, does not constitute an

adequately specific contradiction to support an adverse credibility

determination.  See Trevizo, 871 F.3d at 682 (noting that plaintiff's "childcare

responsibilities permit her to rest, take naps, and shower repeatedly throughout the

day, all of which would be impossible at a traditional full-time job").  As to Plaintiff's

ability to cook, the ALJ failed to address Plaintiff's testimony that he can no longer cook

"big meals" because he cannot stand for long periods of time without experiencing back

pain.  (AR 684.)  Indeed, Plaintiff reported that the extent of his current cooking ability is

making "easy and fast meals, cup o noodles, frozen dinners, sandwiches, etc."  (Id.)

Further, the daily activities cited by the ALJ are not inconsistent with Plaintiff's

testimony that he is unable to sit, stand, or walk for long enough periods to make it

through a full workday.  The types of activities Plaintiff can perform—watching

television and movies, doing house chores, using public transit—are analogous to the

"undemanding" activities cited by the court in Orn v. Astrue.  495 F.3d 625, 639 (9th Cir.

2007) (holding that "reading, watching television, and coloring in coloring books are

activities that are so undemanding that they cannot be said to bear a meaningful

relationship to the activities of the workplace").  These activities are "not necessarily

transferable to the work setting" and certainly not dispositive of Plaintiff's ability to

work eight hours a day, five days a week.  See Vertigan, 260 F.3d at 1050 (holding

activities such as walking and swimming are not transferable to a work setting);

Albertson v. Colvin, 659 F. App'x 372, 374 (9th Cir. 2016) (holding plaintiff's ability to

household chores and occasionally run errands was not a specific, clear, and convincing

reason to reject his testimony).  Thus, because the ALJ mischaracterized Plaintiff's daily

activities and did not consider their transferability to a workplace setting, this is not a

clear and convincing reason for discrediting Plaintiff's symptom testimony.

### 6.  Conclusion

As the foregoing discussion explains, the ALJ erred by failing to specifically identify

which of Plaintiff's statements he found not credible and linking that testimony to

specific evidence supporting his non-credibility determination.  Holohan, 246 F.3d at

1208.  Furthermore, the ALJ failed to provide clear and convincing reasons, supported

by evidence in the record, to support his conclusion; this failure is legal error and is not

harmless because it precludes the court from conducting a meaningful review of the

ALJ's reasoning.  See Brown-Hunter, 806 F.3d at 489.  On remand, the ALJ should

reevaluate Plaintiff's symptom testimony and specifically identify which portions of it, if

any, the ALJ finds not credible and why.

### C.  Whether New Evidence Submitted to the Appeals Council Warrants Remand

#### 1.  Summary of the parties' arguments

Lastly, Plaintiff argues that the Appeals Council should have considered a

computed tomography scan from August 2019 ("2019 CT scan") and magnetic

resonance imaging from November 2020 ("2020 MRI").  (Mot. at 14–17.)  Plaintiff

explains that 2019 CT scan showed no issues with nerve roots and the 2020 MRI

revealed moderate degenerative disc disease in various parts of the lumbar spine.  (Id.

at 14 (citing AR 210–13).)  He argues this evidence is material because the ALJ only

considered one imaging study addressing his lumbar spine impairment.  (Id. at 16.)  In

response, the Commissioner argues that the 2019 CT scan and 2020 MRI do not

undermine the substantial evidence supporting the ALJ's decision.  (Opp'n at 15–18.)

The Commissioner contends the proper inquiry is "whether in light of all the evidence of

record—including the new evidence—the ALJ's decision is supported by substantial

evidence."  (Id. at 16–17 (citing Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157,

1159–60 (9th Cir. 2012).)  Applying this standard and considering the new evidence, the

Commissioner says substantial evidence still supports the ALJ's decision, as both sets of

imaging show only mild to moderate back problems.  (Id. at 17.)

#### 2.  Applicable law

The Agency's regulations provide that the Appeals Council must consider

additional evidence if it is "new, material, and relates to the period on or before the

date of the hearing decision, and there is a reasonable probability that the additional

evidence would change the outcome of the decision."  20 C.F.R. § 404.970(a)(5).

However, the Appeals Council need only consider additional evidence under paragraph (a)(5) upon a showing of "good cause" for the late submission.  20 C.F.R. § 404.970(b) (listing non-exhaustive examples of good cause for failing to submit evidence prior to the administrative hearing).  The Ninth Circuit has held that new evidence is "material" if it "'bear[s] directly and substantially on the matter in dispute,' and if there is a 'reasonabl[e] possibility that the new evidence would have changed the outcome of the . . . determination.'"  Bruton v. Massanari, 268 F.3d 824, 827 (9th Cir. 2001), as amended (Nov. 9, 2001) (quoting Booz v. Sec'y of Health & Hum. Servs., 734 F.2d 1378, 1380 (9th Cir. 1984)).  Finally, district courts must evaluate new evidence and the "record as a whole" to determine whether the ALJ's decision is supported by substantial evidence.  Brewes, 682 F.3d at 1159–60 (holding when a claimant submits new evidence to the Appeals Council and it declines review, the new evidence is part of the administrative record that the district court must consider).

### 3.  Additional evidence submitted to the Appeals Council

After the ALJ's adverse disability determination on August 26, 2021, Plaintiff requested review by the Appeals Council on October 18, 2021.  (AR 548–51.)  On August 26, 2022, Plaintiff asked the Appeals Council to consider additional evidence, arguing it was "material" for several reasons:  (1) counsel was not the representative at the administrative hearing; (2) the records were so close to the hearing date that it was not feasible to present them; (3) the Commissioner was advised of these records within five days of the hearing; (4) the records are dated after the hearing date but prior to the decision date; and (5) the records address chronic symptoms and limitations.  (AR 208.)  Relevant to the instant appeal, Plaintiff asked the Appeals Council to consider a 2019 CT scan and 2020 MRI.  (AR 210–13.)

### a.  2019 CT scan

Imaging Healthcare Specialists performed a CT scan of Plaintiff's lumbar spine on August 8, 2019, after Plaintiff's complaints of chronic lower back pain.  (AR 212.)  The findings were normal with no visible mass in the paraspinal area; mild degenerative

changes in the lumbar spine with diffuse vertebral spurs; and degenerative change with partial bony fusion in the right SI joint.  (<u>Id.</u>)  Imaging revealed the following at the lumbar disc levels:

- <u>T12-L1, L2-L3, and L4-L5 levels</u>:  Disc bulge and spurs with mild central stenosis.

- <u>L2-L3 level</u>:  Associated degenerative facet change with multilevel foraminal narrowing which reaches moderate in degree.

- <u>L4-L5 level</u>:  Degenerative change and partial bony fusion involving right SI joint.

(AR 212–13.)  Lastly, the physician noted "[n]o significant interval change since the patient's previous exam of 9/14/2018."  (AR 213.)

### b.  2020 MRI

Imaging Healthcare Specialists performed an MRI of Plaintiff's lumbar spine on November 5, 2020, after Plaintiff's complaints of low back and lower extremity pain. (AR 210.)  The findings were normal with no visible mass in the paraspinal area; no fractures, defects, or lesions in the bones; and normal caliber, contour, and signal intensity in the spinal cord.  (<u>Id.</u>)  With respect to lumbar disc levels, imaging revealed the following:

- <u>T12-L1 level</u>:  Mild degenerative disc disease "with a left paramedian disc extrusion which deflects the descending segment of the left L1 nerve."

- <u>L2-L3 level</u>:  Moderate degenerative disc disease and a "3 mm disc bulge and mild facet arthropathy.  Mild narrowing of the central canal and neural foramen."

- <u>L3-L4 level</u>:  Mild degenerative disc disease "with a 3mm disc bulge" and "mild narrowing the central canal neural foramen."

- <u>L4-L5 level</u>:  Moderative degenerative disc disease and a "4 mm disc bulge.  Mild narrowing of the central canal and moderate narrowing of the right greater than left lateral recesses.  Moderate narrowing of the neural foramen.  No direct neural compression."

(AR 211.)  There were no significant issues at the L1-L2 or L5-S1 levels.  (<u>Id.</u>)

/ / /

### 4. Analysis

On September 15, 2022, the Appeals Council denied Plaintiff's request for review, making ALJ Verne's decision the final decision of the Commissioner.  (AR 1–10.)  The Appeals Council did not exhibit the 2020 MRI, reasoning it "does not show a reasonable probability that it would change the outcome of the decision."  (AR 2.)  Further, the Appeals Council did not exhibit the 2019 CT scan because it was "not new" and was already contained within the record.  (Id.)  Neither party disputes that these imaging records "relate[] to the period on or before the date of the hearing decision" or that there was "good cause" for their late submission.  See 20 C.F.R. § 404.970(a)(5); 20 C.F.R. § 404.970((b).  Accordingly, the relevant questions for this Court are: (1) whether the 2019 CT scan and 2020 MRI are "material" and (2) whether, considering all the evidence, the ALJ's decision is supported by "substantial evidence."  Bruton, 268 F.3d at 827; Brewes, 682 F.3d at 1159–60.

### a. Materiality

New evidence is material if there is a reasonable probability that it would have changed the outcome of the ALJ's decision.  See 20 C.F.R. § 404.970(a)(5); Bruton, 268 F.3d at 827.  Plaintiff primarily argues the 2019 CT scan and 2020 MRI are material because the ALJ only considered one imaging study addressing his lumbar spine impairment.  (Mot. at 16.)  Plaintiff is correct that the ALJ's written decision only explicitly referenced one imaging study— a September 14, 2018 CT scan ("2018 CT scan") that "showed mild diffuse chronic discogenic spondylosis and facet arthrosis with borderline central canal stenosis at L2-L3 and L4-5."  (AR 62 (citing 841).)  However, as the Appeals Council pointed out in its denial letter, the record before the ALJ included multiple imaging studies, including the 2019 CT scan now at issue.  (See AR 2 ("This evidence is not new because it is a copy of Exhibits 3F and 25F").)  Exhibit 3F contained imaging studies dated August 2, 2018 [AR 840]; September 14, 2018 [AR 841–42]; and February 12, 2019 [AR 865]; while Exhibit 25F contained the 2019 CT scan [AR 1421–

22].[12]  The Court is not convinced that the ALJ only considered one imaging study, where as here, multiple imaging studies were exhibited in the record and the ALJ cited to other sections of these exhibits.

Even if the ALJ only considered the 2018 CT scan, it reaches the same overall conclusion as the 2019 CT scan and 2020 MRI.  (Compare AR 841–42 with AR 210–13.) The 2018 CT scan revealed no significant disc/facet abnormality or stenosis at L1-L2 or L5-S1; mild disc compression and mild dorsal disc bulge at L3-L4; and mild diffuse chronic discogenic spondylosis and facet arthrosis with borderline central canal stenosis at L2-L3 and L4-L5.  (AR 841.)  Based on this, the ALJ found Plaintiff has degenerative disc disease.  (AR 58.)  Both the 2019 CT scan and 2020 MRI revealed only mild to moderate degenerative disc changes in the lumbar and thoracic spine.  (AR 210–13.) First, the 2019 CT scan revealed "no significant interval change since the patient's previous exam of 9/14/2018."  (AR 213.)  It also noted "no significant disc/facet abnormality or stenosis at L1-L2 or L5-S1 levels and "findings are unchanged" at the L2-L3, L3-L4, and L4-L5 levels.  (Id.)  Second, the 2020 MRI revealed "moderate degenerative disc disease" at the L2-L3 and L4-L5 levels and "mild degenerative disc disease" at the L3-L4 and T12-L1 levels.  (AR 210–11.)  Plaintiff fails to explain how the 2019 CT scan and 2020 MRI would alter the ALJ's finding of degenerative disc disease or his ultimate disability determination.  (Mot. at 14–17; AR 58.)  Because Plaintiff has not shown a reasonable probability that the newly submitted evidence would have changed the outcome of the ALJ's decision, the Court finds it is not material.

### b.  Substantial evidence

Finally, the Court considers whether in light of all the evidence—including the 2019 CT scan and 2020 MRI—the ALJ's decision is supported by substantial evidence. Brewes, 682 F.3d at 1163; Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011).  The Commissioner argues the newly submitted imaging reports do not

---

[12] Exhibit 15F also contained duplicates of two imaging studies from August 2, 2018 and September 14, 2018.  (See AR 1080–84.)

22cv1769-MSB

undermine the substantial evidence supporting the ALJ's decision because they show only mild to moderate degenerative disc changes.  (Opp'n at 17.)  Namely, the Commissioner highlights how the ALJ's written decision noted Plaintiff had "no lumbar tenderness, no spasms, a negative straight leg raise test, good muscle tone with good active range, intact ("5/5") strength in all extremities, intact sensation, and a normal gait."  (Id. (citing AR 63, 917).)  The same medical record opined Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently and stand, walk, or sit for six hours of an eight-hour workday.  (Id. (citing AR 918).)  Further, the ALJ's written decision noted Plaintiff prepared his own meals, cared for his children and pets, and performed various household chores.  (Id. (citing AR 63, 682, 684.)  Ultimately, the ALJ limited Plaintiff to medium work "[t]o account for back pain and reported neuropathy." (AR 63.)

The Court declines to rule on whether the ALJ's decision is supported by substantial evidence because the case is already being remanded on other grounds.  See, e.g., Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) (declining to reach other assignments of error by plaintiff where the case was being remanded).  However, the Court finds the ALJ adequately addressed Plaintiff's lumbar spine impairment in his written decision.  The ALJ acknowledged Plaintiff's degenerative disc disease and complaints of back pain [AR 59, 62–63], but found the severity of Plaintiff's condition to be less than alleged due to otherwise normal findings.  Accordingly, the ALJ limited Plaintiff to medium work with breaks every two hours.  (AR 61.)  Plaintiff fails to explain why the 2019 CT scan and 2020 MRI would be likely to change the ALJ's decision, which appears rational.  See Tommasetti, 533 F.3d at 1038 (upholding the ALJ's finding where it is susceptible to more than one rational interpretation).  Thus, the Court finds no error with respect to the newly submitted evidence.

**5. Conclusion**

Plaintiff has not demonstrated a reasonable probability that the 2019 CT scan and 2020 MRI would have changed the outcome of the ALJ's decision, nor has he shown that

the ALJ's decision was not supported by substantial evidence. <u>Bruton</u>, 268 F.3d at 827; <u>Brewes</u>, 682 F.3d at 1159–60. In fact, the newly submitted evidence seems to reach substantially the same conclusion as the 2018 CT scan—that Plaintiff has degenerative disc disease. (<u>Compare</u> AR 841–42 <u>with</u> AR 210–13.) Because this case is already being remanded on other grounds, it is not necessary for the Court to rule on whether the ALJ's decision is supported by substantial evidence. With respect to the 2019 CT scan and 2020 MRI, the Court finds no error.

## VI.  CONCLUSION

The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the case to the Social Security Administration for further proceedings. <u>Id.</u> The reviewing court has discretion in determining whether to remand for further proceedings or award benefits. <u>See</u> <u>Salvador v. Sullivan</u>, 917 F.2d 13, 15 (9th Cir. 1990); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989). Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision. <u>See</u> <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497 (9th Cir. 1984). Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled. <u>See</u> <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593 (9th Cir. 2004); <u>Hoffman v. Heckler</u>, 785 F.2d 1423, 1425 (9th Cir. 1986); <u>Bilby v. Schweiker</u>, 762 F.2d 716, 719 (9th Cir. 1985); <u>Kornock v. Harris</u>, 648 F.2d 525, 527 (9th Cir. 1980). In this case, Plaintiff asks this Court to reverse the ALJ's decision and award him benefits, or in the alternative, remand for further proceedings. (Mot. at 17.) Defendant asks the Court to uphold the decision, or in the alternative, remand for further proceedings. (Opp'n at 19.)

The Court finds that remand for further administrative proceedings is warranted because additional proceedings could remedy the defects in the ALJ's decision. Specifically, the Court **REMANDS so that the ALJ may reexamine** Plaintiff's subjective

pain and symptom testimony and the applicable clear and convincing standard in a manner consistent with this Order.  For the foregoing reasons, the Court **ORDERS** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

      **IT IS SO ORDERED.**

Dated:  January 19, 2024

Honorable Michael S. Berg
United States Magistrate Judge